# United States Court of Appeals
## For the First Circuit

---

No. 09-1728

UNITED STATES <u>ex</u> <u>rel</u>. JACQUELINE KAY POTEET and JOHN DOE,

Plaintiffs, Appellants,

v.

BAHLER MEDICAL, INC., et al.,

Defendants, Appellees,

LAWRENCE G. LENKE, M.D., et al.,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, <u>U.S. District Judge</u>]

---

Before

Lipez, Howard and Thompson,
<u>Circuit Judges</u>.

---

<u>John R. Knight</u>, with whom <u>Everett B. Gibson</u>, <u>Andrew R. Carr</u> and <u>Bateman, Gibson, LLC</u> were on brief, for appellants.
  <u>John W. Lundquist</u>, with whom <u>Dulce J. Foster</u> and <u>Fredrikson & Byron, P.A.</u> were on brief, for appellees John Bendo, M.D., et al.
  <u>Ara B. Gershengorn</u>, with whom <u>Nicholas C. Theodorou</u> and <u>Foley Hoag, LLP</u> were on brief for appellees Bahler Medical, Inc., et al.
  <u>A. Neil Hartzell</u>, with whom <u>Kevin G. Kenneally</u>, <u>LeClairRyan</u>, <u>Dean A. McConnell</u>, <u>Mark A. Fogg</u> and <u>Kennedy Childs & Fogg, P.C.</u> were on brief for appellee George A. Frey, M.D.

        <u>Kent Wicker</u>, with whom <u>Reed Wicker, PLLC</u> was on brief for
appellees Steven Glassman, M.D.; John Dimar, M.D; and Mladen
Djurasovic, M.D.

                      ————————————————

                      September 8, 2010

                      ————————————————

HOWARD, **Circuit Judge**.  The False Claims Act (FCA) allows private persons to file qui tam actions on behalf of the United States against persons or entities who knowingly submit false claims to the federal government.  31 U.S.C. § 3730.  In 2007, Jacqueline Kay Poteet brought a qui tam action against 120 spine surgeons[1] and eighteen medical device distributors.  Poteet, a former employee of Medtronic Sofamor Danek USA, Inc. (MSD), claimed that the defendants defrauded the federal government by, among other things, unlawfully promoting the medical products of MSD and its parent Medtronic Inc.

The district court dismissed Poteet's action with prejudice.  The court held that the claims against the doctor defendants were jurisdictionally barred by the FCA's public disclosure provision, id. § 3730(e)(4)[2], and that the claims against the distributor defendants were not pled with the particularity required by Federal Rule of Civil Procedure 9(b) for claims sounding in fraud.

Poteet appeals, arguing that the district court erred when it (1) dismissed her complaint against the doctor defendants

_____

[1] Poteet later voluntarily dismissed eighty-four of the original doctor defendants.

[2] The public disclosure provision was recently amended by the Patient Protection and Affordable Act, Pub. L. 111-148, 124 Stat. 119.  This amendment, however, is not retroactive.  Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson, 130 S. Ct. 1396, 1400 n.1 (2010).  Accordingly, we decide this case under the previous iteration of the provision.

based on the public disclosure provision; (2) dismissed all claims with prejudice; and (3) denied her motion for leave to file a second amended complaint.  We affirm.

## I.  Statutory scheme

The primary focus of this appeal is on the FCA's public disclosure provision.  We start with the statutory scheme.

The FCA prohibits the knowing submission of false or fraudulent claims to the United States.  31 U.S.C. § 3729(a).[3]  The federal government may bring a civil action to enforce the FCA, id. § 3730(a), and the statute also contains a qui tam provision authorizing private persons to bring, as relators, civil actions on behalf of the United States.  Id. § 3730(b).  The government has

---

[3] The Act provides, in relevant part,

Any person who --

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; [or]

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

...

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person . . . .

31 U.S.C. § 3729(a).

the option to intervene in a qui tam action and assume primary responsibility over it. Id. § 3730(b)(2), (b)(4), (c)(1).

Whether or not the government intervenes, the relator is eligible to collect a portion of any damages awarded. Id. § 3730(d). Although this financial incentive encourages would-be relators to expose fraud, it also serves to attract those looking to capitalize on fraud already exposed by others. To prevent opportunistic plaintiffs from bringing parasitic qui tam actions, the FCA contains a provision disallowing qui tam actions that are based on prior public disclosures of fraud, as long as the disclosures were made in statutorily specified sources. Id. § 3730(e)(4)(A). This provision is often referred to as the "public disclosure bar." See, e.g., United States ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 52 (1st Cir. 2009); United States ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 729 (1st Cir. 2007). It provides:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).

## II.  Facts

With the legal framework in place, we turn to the specifics of the case.

In 2007, Poteet brought this action against the doctor and distributor defendants in federal district court in Massachusetts.  Her claims against the defendants centered around their relationship with Medtronic, a medical technology firm that manufactures and distributes medical equipment and supplies, and Medtronic's subsidiary MSD, which manufactures and sells spinal implants and other surgical devices.[4]

With respect to the physician defendants, Poteet alleged inter alia that they had unlawfully promoted a Medtronic device to third-party doctors, knowing that this promotion would result in the third-party doctors submitting false claims for reimbursement to the federal government.

The district court dismissed Poteet's claims against the doctor defendants with prejudice, after determining that those claims were based on prior public disclosures in a series of lawsuits brought against Medtronic and various doctor defendants and in media coverage of these lawsuits.  We briefly recap those lawsuits, and the media coverage they generated.

---

[4] Neither Medtronic nor MSD were named as defendants in the action.  We will refer to these companies collectively as "Medtronic."

In 2001, Scott Wiese, a former employee of Medtronic, sued Medtronic in California state court for wrongful termination. In his complaint, Wiese alleged that Medtronic fired him after he refused to pay illegal kickbacks to doctors in exchange for their business.

In 2002, a "John Doe" relator filed a qui tam action against Medtronic and ten doctors in the Western District of Tennessee. This complaint, filed under seal, alleged that Medtronic had paid kickbacks to the doctors and that these "improper inducements . . . cause[d] the submission of false claims for payment in violation of the [FCA]." The New York Times published an article about a government investigation into the claims entitled, "Inquiry into Possible Kickbacks at Medtronic Unit." Reuters, Inquiry into possible kickbacks at Medtronic unit, Sep. 9, 2003, at C.4. The Times published a second story about the investigation, entitled, "An Operation to Ease Back Pain Bolsters the Bottom Line, Too." Reed Abelson & Melody Petersen, An Operation to Ease Back Pain Bolsters the Bottom Line, Too, N.Y. Times, Dec. 31, 2003, at A.1.

In 2003, Poteet herself filed a qui tam action against twelve doctors and five healthcare providers, also in the Western District of Tennessee where the John Doe complaint had been filed. United States ex rel. Poteet v. Medtronic, Inc., 552 F.3d 503, 508 (6th Cir. 2009) ("Poteet I"). Poteet alleged that Medtronic paid

-7-

kickbacks to the defendant doctors to get them to use Medtronic products. Id. at 508-09. Thereafter, Poteet claimed, the doctors submitted numerous false, fraudulent, and ineligible claims for Medicare and Medicaid reimbursement to the federal government in violation of the FCA. Id. at 509. Poteet further alleged that the doctors promoted Medtronic products to third-party doctors, that they "improperly influenced" the third-party doctors, and that the third-party doctors subsequently submitted false claims to the federal government for reimbursement. Poteet claimed that the actions of the defendants violated both the FCA and the federal Anti-Kickback statute, 42 U.S.C. § 1320a-7(b)(b). Like the John Doe action, Poteet's lawsuit was covered by the news media. The New York Times published a story entitled, "Medtronic says a 2nd suit is filed over alleged kickbacks." Bloomberg News, N.Y. Times, Medtronic says a 2nd suit is filed over alleged kickbacks, Sep. 3, 2004, C3. Following this, the Times published another story entitled, "Whistle-Blower Suit Says Device Maker Generously Rewards Doctors." Reed Abelson, Whistle-Blower Suit Says Device Maker Generously Rewards Doctors, N.Y. Times, Jan. 24, 2006, C1.

    In 2006, the government successfully moved to dismiss the Poteet I complaint. Poteet I, 552 F.3d at 509. In its motion, the government argued that Poteet's action was based on public disclosures made in Wiese and Doe and, as a result, was barred by the FCA's public disclosure provision. Id. The government also

informed the district court that it had entered into a settlement agreement with Medtronic, an agreement which, among other things, included a condition that the Poteet and Doe qui tam actions be dismissed.  Id. at 509-10.  The Sixth Circuit affirmed the dismissal of Poteet's action.  Id. at 510.  The court held that Poteet's suit was "based upon" the Wiese complaint and that, as a result, the public disclosure bar stripped the courts of subject matter jurisdiction over Poteet's complaint.  Id. at 514-15.

In the present case, the district court held that the allegations made in these previous lawsuits, along with the accompanying media coverage of the lawsuits, prevented jurisdiction over Poteet's claims against the doctor defendants.  The district court further ruled that Poteet had not pled her claims against the distributor defendants with the requisite particularity.

### III.  Discussion

Poteet presents three claims on appeal.  We consider them in turn.

#### A.  Public disclosure provision

Poteet first argues that the district court erred when it held that the FCA's public disclosure provision barred her claims against the doctor defendants.  Ordinarily, we review a district court's dismissal for lack of subject matter jurisdiction de novo, Ondis, 587 F.3d at 54, and that holds true here.  Poteet, as the

proponent of federal jurisdiction, bears the burden of proving its existence by a preponderance of the evidence.  Id.

We employ a multi-part inquiry to determine whether the public disclosure bar applies.  Ondis, 587 F.3d at 53.  The first three parts of this inquiry ask:  (1) whether there has been a prior, public disclosure of fraud; (2) whether that prior disclosure of fraud emanated from a source specified in the statute's public disclosure provision; and (3) whether the relator's qui tam action is "based upon" that prior disclosure of fraud.  See id.  If any of these questions are answered in the negative, the public disclosure bar is inapplicable.  Id. Conversely, if all three questions are answered in the affirmative, the public disclosure bar applies unless the relator qualifies under the "original source" exception.  Id. at 53-54l.  Although we are aware of no command to address the first three questions in any particular order, we here consider each in the order described above.  As Poteet does not claim that she qualifies as an "original source," we do not address that exception.

1. Prior, public disclosures of fraud.

The disclosures at issue primarily come from three different sources:  disclosures made in the news media (the New York Times articles generally discussing the allegations made in Doe and Poteet I), disclosures made in a civil complaint filed in

state court (the Wiese complaint), and disclosures made in a civil

complaint filed in federal court (the Poteet I complaint).[5]

A prior, public disclosure of fraud occurs "when the

essential elements exposing the particular transaction as

fraudulent find their way into the public domain." Ondis, 587 F.3d

at 54. To be a disclosure "of fraud" the disclosure must contain

either (1) a direct allegation of fraud, Poteet I, 552 F.3d at 513,

or (2) both a misrepresented state of facts and a true state of

facts so that the listener or reader may infer fraud. Ondis, 587

F.3d at 54.[6]

There is no dispute that there have been prior

disclosures of fraud. The Wiese and Poteet I complaints contain

direct allegations of fraud against Medtronic and various doctor

defendants. Moreover, articles published in the New York Times

discuss some of those allegations. The only issue is whether those

disclosures of fraud were "in the public domain."

Any transactions and allegations discussed in the news

media would seem to qualify as public disclosures, and Poteet does

not argue otherwise. But because the civil complaints contain

_____

[5] We do not address the allegations in the Doe complaint, as
that complaint apparently was under seal when Poteet filed this
action.

[6] Two separate disclosures, one containing a misrepresented
state of facts and the other a true state of facts, may combine to
create an inference of fraud. Id. ("The two states of facts may
come from different sources, as long as the disclosures together
lead to a plausible inference of fraud.").

crucial allegations not discussed in the news media, we consider whether the filing of a civil complaint in a state or federal court qualifies as a public disclosure. See Rost, 507 F.3d at 728 n.5 ("It could be that disclosure in the form of a filing to a government body such as a court (not under seal) where all records are public could be public disclosure . . . [but this] is not our case.").

The general rule is that a disclosure is "public" if it is generally available to the public. United States ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp., 540 F.3d 1180, 1185 (10th Cir. 2008) ("[W]e interpret 'public disclosure' to require release of information such that it is generally available and not subject to obligations of confidentiality."); United States ex rel. Feingold v. AdminaStar Fed., Inc., 324 F.3d 492, 495 (7th Cir. 2003) (defining "public" in "public disclosure" as "accessible to or shared by all members of the community"); see also Kennard v. Comstock Res., Inc., 363 F.3d 1039, 1043 (10th Cir. 2004) (noting that the public disclosure requirement "clearly contemplates that the information be in the public domain in some capacity"); United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1160 (3d Cir. 1991) ("We read section 3730(e)(4) as designed to preclude qui tam suits based on information that would have been equally available to strangers to

the fraud transaction had they chosen to look for it as it was to the relator.").

       We see no reason to depart from the accepted rule. Holding that a disclosure is "public" if it is generally available to members of the public is consistent with the purposes of the qui tam provision and the public disclosure bar.  Qui tam actions are intended to help the federal government expose fraud on the United States that has escaped the government's detection.  If the materials necessary to ground an inference of fraud are generally available to the public, however, there is nothing to prevent the government from detecting it.  Concomitantly, the likelihood of parasitic qui tam actions in such circumstances is high, providing a reason for the public disclosure bar.[7]

       It follows that a civil complaint filed in court qualifies as a public disclosure.  The cases are in agreement. United States ex rel. Paranich v. Sorgnard, 396 F.3d 333, 334 (3d Cir. 2005) ("[A] complaint in a civil action . . . is sufficiently within the meaning of the Act to constitute a public disclosure."); Kennard, 363 F.3d at 1043 ("Once a complaint is filed, a civil

-----

       [7]A disclosure may be "public" even if it is not generally available to members of the public.  For example, in Ondis we held that, under certain circumstances, the government's actual disclosure to one member of the public may qualify as a public disclosure for purposes of the FCA.  Ondis, 587 F.3d at 55 (holding that the government's response to an individual's "FOIA request is an act of public disclosure because the response disseminates (and, thus, discloses) information to members of the public (and, thus, outside the government's bailiwick)").

action has commenced and public disclosure has occurred."); Stinson, 944 F.2d at 1156 (holding that information "on file in the clerk's office" was publicly disclosed); United States ex rel. McKenzie v. Bellsouth Telcoms., Inc., 123 F.3d 935, 939 (6th Cir. 1997) ("'Public disclosure' also includes documents that have been filed with a court, such as . . . a plaintiff's complaint."); Fed. Recovery Servs. v. United States, 72 F.3d 447, 450 (5th Cir. 1995) ("'Any information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for purposes of section 3730(e)(4)(A).' . . . This includes civil complaints.") (quotation omitted); United States ex rel. Siller v. Becton Dickinson & Co., 21 F.3d 1339, 1350 (4th Cir. 1994) ("A civil complaint is unquestionably a 'public disclosure of allegations.'"); United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 652 (D.C. Cir. 1994) (holding that materials "made public through filing" were publicly disclosed); Stinson, 944 F.2d at 1156 (holding that information "on file in the clerk's office" was publicly disclosed); see also United States ex rel. West v. Ortho-McNeil Pharm., Inc., 538 F. Supp. 2d 367, 377 (D. Mass. 2008) ("[I]t is generally accepted that publicly available documents, such as a complaint filed in conjunction with a civil lawsuit, qualify as public disclosures under the statute.").

Poteet's three arguments for a different result are unavailing. First, she argues that a civil complaint filed in state or federal court does not qualify as a public disclosure because there is no "real audience" to the disclosure. We take the argument to be that there must be proof that the information has actually been disclosed to members of the public outside of the government filing clerk and interested parties. That argument is a nonstarter, in view of our holding that if the relevant information is generally available to members of the public, then the information has been publicly disclosed. See Kennard, 363 F.3d at 1043 ("It is not necessary that the filing clerk or any member of the public read the complaint.").

Her second argument is more narrow and is limited to the Wiese complaint, which was filed in state court. Poteet says that while a civil complaint filed in federal court may qualify as a public disclosure, one filed in state court may not.[8] Her rationale for distinguishing between the two appears grounded in concerns about FCA enforcement. Poteet claims that the federal government is less likely to become aware of state court complaints alleging fraud on the United States, and so is also less likely to

---

[8] The defendants argue that Poteet is precluded from making this argument for two reasons: (1) she waived this argument by failing to make it in the district court, and (2) she is collaterally estopped from making the argument by the Sixth Circuit's decision in Poteet I. Regardless, the claim fails on the merits in any event.

initiate an FCA case to combat such fraud.  This creates an enforcement gap.  To help fill this perceived gap, Poteet suggests that we should hold that allegations in state court complaint are not "public" disclosures and thus are fair game for would-be qui tam relators.

We are not persuaded.  First, the state/federal distinction Poteet draws is not supported by the plain language of the statute.[9]  Disclosures need not occur in a federal forum to qualify as "public."  31 U.S.C. § 3730(e)(4)(A) (noting that disclosures in the "news media" qualify as public disclosures).  Second, Poteet's argument fails to acknowledge what we have said is the purpose of the public disclosure bar.  The bar is designed to preclude parasitic qui tam actions.  <u>Ondis</u>, 587 F.3d at 53 (noting that the public disclosure bar "is designed to foreclose qui tam actions in which a relator, instead of plowing new ground, attempts to free-ride by merely repastinating previously disclosed badges of

_____

[9]The recent amendment to the public disclosure provision narrows the sources from which a public disclosure may emanate. This provision now reads, in relevant part:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
>
> (i) in a <u>Federal</u> criminal, civil, or administrative hearing in which the Government or its agent is a party . . . .

31 U.S.C. § 3730(e)(4)(A)(i) (emphasis added).

fraud"). The focus, then, is on whether state court complaints are less likely than federal court complaints to spawn parasitic qui tam actions. The answer is "no," given that state court complaints, on the whole, are just as accessible to members of the public as federal court complaints and thus equally likely to provide fodder for parasitic qui tam actions. Poteet makes no argument to the contrary.

Finally, Poteet argues that we should carve out an exception to the public disclosure bar where the relator's qui tam action is based on prior, public disclosures made by the relator herself. In her view, applying the public disclosure bar in such a case does not further the purpose of the bar, as a qui tam relator is not being a parasite if she is merely feeding off herself. If we were to accept this argument, the allegations in Poteet I would not be considered "public disclosures" for purposes of this qui tam action, but still would be for qui tam actions brought by others.

Even if such an exception were to exist, it would be inapplicable here. Poteet's prior public disclosures were themselves parasitic. As previously noted, the Sixth Circuit held that the public disclosure provision barred Poteet's action in Poteet I, concluding that the action was based upon prior public disclosures made in Wiese and that Poteet did not qualify as an

original source.   552 F.3d at 514-15.   Poteet's current qui tam action is also parasitic of Wiese.

Moreover, such an exception strikes us as unnecessary. The qui tam mechanism is intended to encourage people to blow the whistle on fraud.  If they have already done so, whether to take advantage of a qui tam reward or for other reasons, there seems to be little need to encourage them to give the whistle a second toot. Furthermore, the "original source" exception already ensures that the most valuable relators -- typically insiders with direct and independent knowledge of fraud -- will not be barred by prior public disclosures, whether made by the relators themselves or others.   31 U.S.C. § 3730(e)(4)(B).   If Congress wants to expand this exception, it is of course free to do so, but this case provides no reason for us to engage in an expansive reading of the exception.

2. Sources specified in the statute.

We next ask whether the prior disclosures emanated from a source specified in the statute.  The Supreme Court has recently divided these sources into three categories:  (1) "criminal, civil, or administrative hearing[s]," (2) "congressional, administrative, or Government Accounting Office report[s], hearing[s], audit[s], or investigation[s]," or (3) "from the news media."  Graham County, 130 S. Ct. at 1401-02.  The issue here is whether a disclosure in a civil complaint qualifies as a disclosure in a "civil hearing."

-18-

Although the word "hearing" may invoke the image of a formal session for taking testimony or argument, the cases hold that, as it is used in the first category, "hearing" is synonymous with "proceeding." Stinson, 944 F.2d at 1155; Springfield Terminal Ry. Co., 14 F.3d at 652.  In Springfield Terminal Railway Co., the D.C. Circuit noted that courts frequently use the word hearing "to connote informal, 'paper' proceedings," undermining an argument that the word had any one accepted meaning.  14 F.3d at 652.  The court also observed that limiting the word "hearing" to formal proceedings would cut against the Supreme Court's holding in United States ex rel. Marcus v. Hess, 317 U.S. 537 (1943) that a disclosure in a criminal indictment qualified as a disclosure in a criminal "hearing."  Id.  ("If court documents could be copied at will to provide the basis for qui tam suits, a half-century of precedent would be swiftly refuted without a flicker of recognition from Congress.").

We agree with the D.C. Circuit's reasoning and hold that, as used in the statute, "hearing" is synonymous with "proceeding." Because a disclosure in a civil complaint is a disclosure in a civil proceeding, we conclude that the disclosures in Wiese and Poteet I emanate from a statutorily listed source.[10]

---

[10]At the risk of belaboring the point, we note that if the Supreme Court disagreed with this understanding of the word "hearing", it passed up an opportunity to say so in Graham County. In that case, the Court, citing Springfield Terminal Railway Co., observed that "a number of lower courts have concluded that, as

For her part, Poteet again asks us to draw a distinction between complaints filed in state court and those filed in federal court.  According to her, only allegations made in the latter should qualify as disclosures made in civil hearings.

Graham County, decided after the parties submitted briefs in this case, largely disposes of this argument.  In Graham County, the question presented was whether "administrative report" in the second category refers only to federal administrative reports or whether it also encompasses state administrative reports.  Id. at 1400.  The Supreme Court held that "administrative report" encompasses both federal and state administrative reports.  Id. at 1406.  In arriving at this conclusion, the Court considered the other two categories as well, and in so doing noted that, with respect to the sources listed in the first category, "There is . . . no textual basis for assuming that the 'criminal, civil, or administrative hearing[s]' . . . must be federal hearings."  Id. at 1404 (alteration in original).  We are not going to march in a different direction.[11]

---

used in Category I, 'hearing' is roughly synonymous with 'proceeding.'"  Graham County, 130 S. Ct. at 1404 n.8.

[11]This holding has a limited shelf life.  As stated in footnote 9, as amended the statute now includes only disclosures made in "Federal" hearings (among other sources) "in which the government or its agent is a party."  31 U.S.C. § 3730(e)(4)(A)(i).  U.S. ex rel. Kirk v. Schindler Elevator Corp., 601 F.3d 94, 103 n.4 (2nd Cir. 2010).

3. Based upon a prior disclosure of fraud.

The last question to be considered is whether Poteet's qui tam action is "based upon" the prior disclosures of fraud.  As we established in Ondis, an action is "based upon" prior disclosures if the relator's complaint contains allegations that are "substantially similar to" those disclosures.  587 F.3d at 58.  Consequently, when considering this question, we must compare the substance of the prior disclosures with the substance of the relator's complaint.

Here, there is no need for painstaking comparison, as Poteet concedes that most of the allegations in her amended complaint are substantially similar to allegations made in Wiese and Poteet I, and allegations covered by the news media.  She maintains, however, that her allegation regarding the off-label use of INFUSE, one of Medtronic's products, breaks new ground.  In sum, Poteet alleged that the doctor defendants promoted INFUSE to third-party doctors by encouraging them to both use INFUSE off-label and to seek Medicare reimbursement for this use from the federal government.  The defendant doctors did this, Poteet claimed, despite knowing that the off-label use of INFUSE was not eligible for Medicare reimbursement.  The allegation, set forth in Count Two of the amended complaint, reads:

> Defendants have caused the submission of hundreds of thousands of false claims by knowingly purchasing and promoting to Medicare providers sales of INFUSE for off-label uses

-21-

> which were not eligible for Medicare
> reimbursement. Every sale of INFUSE which was
> not made for an FDA unapproved [sic] use that
> was submitted to Medicare, constitutes a false
> claim. Defendants are liable, pursuant to 31
> U.S.C. § 3729, for each of those false claims
> which would not have been made but for
> defendant's off-label promotion of INFUSE. At
> the time they engaged in such unlawful
> promotional activities, defendants knew that
> off-label uses of INFUSE were ineligible for
> Medicare reimbursement and that their
> activities would, in fact cause numerous
> ineligible claims to be submitted to Medicare.
> Had defendants not engaged in such promotions,
> federal funds would not have been used to pay
> for unapproved uses of INFUSE that were not
> qualified to be reimbursed by Medicare.

Despite Poteet's attempt to pitch this allegation as new,
it is in fact just a slightly more detailed version of a prior
allegation made in Poteet I. In her complaint in that case, Poteet
alleged that the doctor defendants promoted Medtronic products to
third-party doctors, "improperly influenced" these doctors, and
that, after this, the third-party doctors submitted false claims to
the federal government for reimbursement. The allegation in Poteet
I reads:

> Plaintiff alleges that after accepting
> excessive remuneration, unlawful perquisites,
> and bribes in other forms for . . .
> recommending the purchase of MSD goods to
> other physicians, the defendant physicians, or
> their respective employers, and in separate
> and individual conspiracy with MSD, . . .
> recommended the purchase of medical devices
> for which payment or reimbursement may be made
> in whole or in part under a federal healthcare
> program. Plaintiff alleges that the
> individual defendants, or their employers, as

-22-

well as physicians improperly influenced by
the individual defendants, thereafter actually
submitted false claims for reimbursement for
such devices for which payment was made in
whole or in part under a federal healthcare
program.

The only notable differences between the two allegations

is that the allegation in this case identifies a specific Medtronic

device (INFUSE) and describes in greater detail how the defendant

doctors improperly influenced the third-party doctors (they falsely

told them that off-label use of INFUSE was eligible for Medicare

reimbursement).  Although these details undoubtedly add some color

to the allegation, the allegation ultimately targets the same

fraudulent scheme.  That is enough to trigger the public disclosure

bar.  See Ondis, 587 F.3d at 58; see also Dingle v. Bioport Corp.,

388 F.3d 209, 215 (6th Cir. 2004) (noting that a contrary ruling

"would allow potential qui tam plaintiff's [sic] to avoid the

public disclosure bar by pleading their complaints with more and

more detailed factual allegations slightly different from more

general allegations already publicly disclosed").

## B.  Dismissals with prejudice

Poteet argues that the district court erred in dismissing

her claims against the doctor and distributor defendants with

prejudice.  We first take up the district court's dismissal of

Poteet's claims against the doctors.  The court held that the

public disclosure bar stripped it of subject matter jurisdiction

over those claims.

Generally, when a federal court dismisses a case for lack of subject matter jurisdiction, the dismissal should be without prejudice. Torres-Fuentes v. Motorambar, Inc., 396 F.3d 474, 475 (1st Cir. 2005). This is because a dismissal for lack of subject matter jurisdiction is not a decision on the merits, and many jurisdictional defects may be cured.

Here, however, the jurisdictional defect is incurable. Because Poteet's claims against the doctor defendants were based on prior public disclosures, they are forever barred. Poteet can do nothing to cure that defect. United States ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (affirming a district court decision dismissing a qui tam action with prejudice based on the public disclosure bar); United States v. N.Y. Med. Coll., 252 F.3d 118, 119 (2d Cir. 2001) (per curiam) (same).

The next question is whether the district court erred in dismissing Poteet's claims against the distributor defendants with prejudice, based on her failure to plead fraud with the requisite particularity. See Fed. R. Civ. P. 9(b). Poteet does not challenge the basis for the dismissal, but rather only the court's decision to dismiss her claims with prejudice.

We need not linger over this argument. While it is true that dismissals for failure to comply with Rule 9(b) are often without prejudice, which gives the plaintiff an opportunity to

correct the pleading deficiencies, it is evident that such a disposition would not make sense here.  In her amended complaint, Poteet admitted that she was unable to offer any further specifics regarding the alleged fraud committed by the distributors.[12]  Since then, Poteet has not added, attempted to add, or even suggested how she might add, any details to the claims made against the distributor defendants.  Accordingly, we discern no error with the district court's disposition.  <u>See</u> <u>United States ex rel. Karvelas</u> v. <u>Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 241-42 (1st Cir. 2004) (holding that the district court did not err in dismissing a qui tam complaint with prejudice where the complaint failed to plead fraud with the requisite particularity).

### C.  <u>Denial of motion to amend</u>

Finally, Poteet argues that the district court erred when it denied her motion to file a second amended complaint.  Our review is for an abuse of discretion.  <u>Windross</u> v. <u>Barton Protective Servs.</u>, 586 F.3d 98, 105-06 (1st Cir. 2009).

A party may amend its complaint more than once "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(i)(2).  In November and December of 2008, Poteet

---

[12] The complaint read, in relevant part:  "At the present time, and without preliminary discovery, it is impossible to plead the fraud perpetrated upon the United States with respect to every false claim filed with greater particularity than furnished herein."

sought leave to file a second amended complaint.[13]   In this complaint, Poteet replaced "plaintiff/relator John Doe," who was previously said to "comprise a number of unidentified people with direct knowledge of the information contained in the allegations herein," with Bobbie Vaden, a former employee of MSD's Memphis accounting office.   Prior to seeking leave to file this second amended complaint, however, Poteet had served complaints that <u>did</u> name Vaden as a relator on the defendants.   Although these complaints had not been filed with the district court, Poteet did not notify the defendants of this fact.   Accordingly, the defendants assumed that Vaden had been formally added to the case and their responsive pleadings accounted for her presence. Ultimately, the district court denied Poteet's motion to file a second amended complaint, holding that it was "unduly delayed and prejudicial to defendants."

Poteet argues that the district court abused its discretion.   In her view, the second amended complaint could not have been prejudicial to the defendants because they had been operating on the assumption that Vaden was party to the case.

Whether or not there was prejudice to the defendants in the sense that Poteet denies, the district court acted within its discretion in denying Poteet's motion.   A contrary ruling would incentivize deception, as a party may well think it the better

---

[13] The defendants did not consent to the amendment.

strategy to mislead an opponent into treating an unofficial amendment as official and then argue to the district court that its formal approval of the amendment is but a ministerial act endorsing a fait accompli.  This is not to say that the defendants were without fault in failing to discern the true state of affairs, but this is not a situation in which two wrongs make a right.

## IV.  Conclusion

For the reasons provided above, we **<u>affirm</u>** the judgment of the district court.